191091 1127 and 1128 Daniel VanderKodde et al. versus Mary Jane Elliott PC et al. Arguments not to exceed 15 minutes for plaintiffs, 15 minutes to be shared by defendants. Mr. Westbrook for the appellants cross-appellees. Good morning. Good morning, your honors. May it please the court, I'm Theodore Westbrook on this case. This is a case that centers on what we have claimed are unlawful actions in post-judgment consumer collections. Each of the appellees is a debt collector subject to the Fair Debt Collection Practices Act. The basic premise of the case is that the law firm appellees here, Mary Jane M Elliott PC and Burton Associates PC, included inflated judgment interest amounts in collection communications after judgments were entered. Those writs of garnishment and other debt collection communications were issued on behalf, by the law firm appellees, on behalf of their debt collector clients. So all of those are defendants and appellees in this action. What they did is they the statutory rate that's allowed under Michigan law. Essentially cheating the interest rate to make a very profitable enterprise even more profitable. We have brought or the... If you're right about Rooker Feldman, do you want us to address any of the other issues that are potentially outcome dispositive and some potentially jurisdictional? I don't think so, your honor. I think it might be inappropriate to reach those issues because obviously as you know the District Court found that the District Court lacked subject matter jurisdiction. I don't know that we reach any of the other issues. How about the other ones that are jurisdictional, like standing? I'm fine with addressing standing because I think it's absolutely clear that there is standing here under this court's ruling in Macy. That's a case that we cited and relied upon in our briefing. I don't know that we need to go through all of that. No, the District Court didn't rule on any of the other issues, only Rooker Feldman abstention. And it's your position that that ruling is erroneous in view of Van Hoven opinion that also came from the same District Court, came from Judge Yonker rather than Judge Maloney, but the same district. That's correct, your honor. It appears on point and appears to support your position and... Should we hear from the other side? Why do people like Rooker Feldman so much in the Western District of Michigan? What's going on up there? I thought that doctrine was dead. I thought so too, your honor, especially after the Exxon case. Is Rooker or Feldman from the Western District of Michigan? I'm just trying to figure this out. I don't think so. It wasn't Feldman, it was a DC case. But no, I agree, your honor. I think Judge Griffin has a good point. Why don't we hear from the other side? Because obviously at the time of briefing Van Hoven had not come out. So if you need more some of this time, you'll get it. But what I understand to be your position is you think you're right on Rooker Feldman. You don't think we should address the other issues, although maybe a slight exception or asterisk if they're jurisdictional issues like standing or the other abstention point that you're agnostic about is I guess what I would hear you to be saying. I think that's very fair to say, your honor. I think you're correct that some of these issues weren't even raised below the Article 3 standing issue wasn't raised below, but at the same time we're actually happy to have that Article 3 standing. Statue of limitations by contrast you think should be dealt with on remand if you're right about Rooker Feldman. I would agree, your honor. Okay, well you may get plenty of time on rebuttal if that's all right, but why don't we hear from the appellee since the way this issue came up. I'm happy to do that. Thanks, your honor. Thank you. Good morning. Good morning. Tom Lutton with Lipson Nielsen. We represent the burnt defendants and the way we discussed dividing up argument was to divide it by issue. And most interested in Rooker Feldman, so are you the Rooker Feldman guy? I was the Rooker Feldman guy who is here to unring the bell and say Van Hoven is wrong. Okay, I can't believe your in-bank petition. Mr. Cook will explain why his clients will win anyway, despite Van Hoven and Mr. Seitz would address the Article 3 standing issues if it pleases the court. I think we just want to talk about Rooker Feldman for now. Right. And so I think you do recognize that we have to follow it whether we agree with you or not. Well, I mean at this point it's recommended for full text publication. I don't know if that final decision has been made. Yeah. I mean that's what is in... I've never heard that argument. Pardon me? That's really creative. I've never heard that argument. Well, I mean that's... I'm crediting you. I've just never heard the point made that it just says recommended. It's actually not in the F-3rd. I guess there's something to change your mind. Anyway, so let's start with Rooker which in which the court said... I'll tell you how I might change my mind to hear where I'm coming from. I think I underwrote it. I think Rooker Feldman has no value unless your name is Rooker Feldman and I think that's what the US Supreme Court means by asking for judgments to be reversed. In other words, you have to have a case where you were doing exactly what 1257 prohibits, which is coming to federal court to undo a judgment of a state court. And that of course is not what you're doing because here the whole claim is that that judgment violated a separate federal statute. And your theory, oddly enough, is that the federal courts don't have jurisdiction over vindicating federal rights not raised in state court. And so if anything, Vanhoeven was underwritten on this particular point. But I think Judge Griffin's point is probably the best one to make sure. This is the third time it's been said. You have to explain why Vanhoeven doesn't apply here. If you can't, then you should just get up and say we can only get anywhere by embanking Vanhoeven. Otherwise, you have to answer that question straight up. I guess there are issues that were not discussed in the Vanhoeven decision which have been raised by the briefing in this case and which show why Roker Feldman does apply to a writ of garnishment, which is the final determination by the Michigan courts as to what the... Does that turn on the premise Vanhoeven's wrong or does that turn on the premise that Vanhoeven is distinguishable? It turns on the premise that Vanhoeven is wrong. Okay, so that's not useful for this argument. Okay. I think then probably, though I'd love to talk, it probably makes more sense for Mr. Cook to discuss why his clients win despite Vanhoeven. I think... Judge Guy, what do you think? I agree with what you just said, Judge Sutton. Okay, I think we should get to that. There's not much we can do. It's a different panel. That's the way it works and it's going to be published. May it please the court, Michael Cook on behalf of the defendant Mary Jane M. Elliott, PC. Getting straight to the point, Vanhoeven doesn't apply to my clients because my argument doesn't hinge on whether or not the writs of garnishment are judgments subject to Roker Feldman. For my clients, the judgments state the interest rate that says will earn interest at the statutory rate of 13%. My clients applied that interest rate. They never changed it. That is the interest rate they applied. So when the plaintiff is arguing that my clients did something wrong, they're arguing that that 13% rate specifically stated in the judgment is wrong. And they're directly contesting that. If they're right, I can't enforce that state court judgment. That's what they're effectively doing. So Exxon talks about state court losers and going to district court to undo the state court judgments. That's what Exxon Mobil, that's not our circuit, that's Exxon Mobil, Justice Ginsburg. I'm pretty sure it's 9-0, but anyway, it's Justice Ginsburg writing. That's not what they're doing. Okay, can I explain? This is really important so you understand this. Yes. They are not seeking to vacate those judgments. Those judgments are the premise of their whole cause of action. That's how they can do a class action with those judgments. In a very perverse way, they're grateful for those judgments because it's those judgments that become the predicate for the violation of a federal law. Okay, so that's what's very strange about Ricker Feldman here. So go ahead with your response to that. I understand your point, Judge. It also dovetails into my statute of limitations argument, which I do want to get to, but I do want to get, I'm going to address your question first, okay? In terms of undoing the judgment, which is what you just expressed, that is exactly what these claims seek to do. If they are right and I cannot enforce this judgment, I can't go out and send a writ of garnishment with a 13% interest stated in it, that is exactly effectively what they have done. That's undermining the effect of the judgment. That's exactly the line ExxonMobil is just like trying to, they keep trying to put it in brighter, bigger words, and forgive me, but lawyers and judges keep not understanding what they're saying. Your Honor, in ExxonMobil, the critical- In other words, you can have a state court judgment that has reasoning, logic, precedence that has very significant impact in other cases, including in federal court. And in that sense, you're right. They're using that judgment here, but it's not right to say that the predicate of their claim is to vacate. Think of it as vacate, vacating the judgment. I don't think Rooker-Feldman is limited to asking the federal district court to reverse or vacate the judgment. It is seeking to prevent enforcement of that judgment. So here, that's exactly what their claim does. If I violate the FCCP by sending a writ of garnishment, doing exactly what this judgment says, they have enjoined enforcement of that judgment through this action. And Your Honor, I understand Vanhoeven. I understand ExxonMobil. One case that I probably should discuss a little bit more in my brief is Abbott versus Michigan. That's a case where- Did you mention it? Yeah, I did. I cited it, but I didn't discuss it. So, but I read from Abbott, it held that Rooker-Feldman borrowed a claim when plaintiffs- It's a Sixth Circuit case? It's a Sixth Circuit. It's published and it's post-Exxon. And it stated, Rooker-Feldman borrowed a claim when plaintiffs, quote, do not claim that the defendants have injured them in any way except by strictly executing those judgments. That's my clients in this case. That's 474 F3rd at 329. And under Abbott, under that entire line of cases that talk about the source of the injury being the judgment, that's my clients. The source of the injury, as it applies to Mary Jane Elliott, is the judgment. You have to help me, but I'm just not hearing how this is any different from Vanhoeven. And I thought that was your point. Because Vanhoeven- I think your distinction is one case is about 13% interest and one case is about 5% interest. Vanhoeven was about the writs. Vanhoeven, they were putting different things into the writs and they were arguing the writ is a judgment subject to Rooker-Feldman. That is not my argument. My argument is Rooker-Feldman applies to these state court judgments to say 13% applies to these state court judgments. There's two explanations in Vanhoeven. One is about the writ and the other is this point you're arguing right now. It's best I can tell. In terms of- And Judge, there is some language in there suggesting it has to be something that was- And I forget the exact phrasing or quote. Adjudicating decided and judicial reviewed, right? There's that line in it. It's not collateral estoppel, right? People confuse these preclusion issues with Rooker-Feldman a lot and that's not what I'm doing. I agree. It doesn't have to be adjudicated specifically decided, right? That said, in footnote 16 of Feldman, and it's repeated again in Exxon footnote 1, it doesn't have to be a specific issue that was litigated and decided. The operative question is, does your injury arise from the source of this judgment, this state court judgment? Are you seeking to have this judgment not enforceable? That is exactly what plans are doing as to my clients. And that's why I think Van Hoopen's decision- What happens out of curiosity had- They had a chance under state law to challenge these writs and bring in this federal statute, okay? Theoretically, they take advantage of that and they say, wait, you can't do this. If you do this, it violates this federal statute. The state court says, I hear what you're saying, but I don't think so. And then everything else is exactly the same. Can you go to federal court at that point? If they go to federal court, I mean, they're going to have a collateral estoppel problem. But is that how it works? I'm asking whether there's a Rooker-Feldman problem if they go to federal court at that point. If they go to federal court and that court has decided the 13% interest rate is correct, that's what applies. And they've objected and the court has entered that decision, then yes, they're going to have probably more specifically a collateral estoppel problem at that point. They can go to federal district court. Well, I think they would have a Rooker-Feldman problem at that point too, because they would have another state court order saying this is 13%, these defendants can apply the 13%. The Rooker-Feldman applies both when you have pure state law and the judgment creates a problem. And Rooker-Feldman applies when you have pure state law plus the federal claim brought into it. That's your position. I believe so, on those different facts, yes. But I'm getting back. I think your answer is cert. My argument is solely about the judgments, Your Honor. It really does not concern the writs. And the judgments say the 13% interest. I understand I heard you in terms of the statute of limitations. All I want to say on that is it was raised, it was briefed. So if Rooker-Feldman was, if we reverse on Rooker-Feldman, you're saying we should look at statute of limitations, all those issues? I'm asking you to look at the statute of limitations. Judicial accounting, I think, weighs in favor of that. It is a question of law. Was it briefed below? It was briefed. I raised it. I briefed it in my motion to dismiss as my second alternative argument. And that's why I brought it up on cross-appeal. And I'm happy to talk about it. The other jurisdictional ones, there's, I guess, an abstention, comedy, and then there's... Yeah, those are my issues. Mr. Seitz will address those issues with you. So again, I guess, to conclude, I encourage you to go back and read the Abbott decision and give contemplation to the fact that I'm not talking about the writs. My Rooker-Feldman argument is based on the state court judgment says 13%. My clients only applied this 13%. They didn't change the rate from the state court judgment. That's what makes them different. All right. Thank you. Thank you. Good morning, Your Honor. Todd Seitz on behalf of the Midland appellees in this case. And the issue that Midland did raise in its briefs, which was not addressed by the district court below, was the issue of Article III standing. But it was raised in front of the... It's Judge Maloney, right? It's Judge Maloney. Right. It was not raised. It was raised only here. It was only raised here. If it was raised down below, and I don't have it in front of me, it might have been raised in the Midland motion to dismiss brief, which was basically an add-on. Your view is we should address that here. Yes. It's jurisdictional. It is jurisdictional, Your Honor. And as this court knows and has said many times before, it can be raised at any time, even sua sponte. And in this case, especially looking at the way Article III jurisprudence and FDCPA is developing in this area... So why wouldn't there be injury here? It seems like it's got real hard monetary value. Well, there was no... And I didn't mean to interrupt, Your Honor. There's no amount paid, injury concrete, as a result of the, I guess, alleged expedited or large interest rate that was put on some of these garnishments. So there's no injury as to the garnishments themselves on the interest rate. And that's something that would go to... And I know that there's some conflict with this, the Casillas opinion by the Seventh Circuit and Judge Barrett and her view and the court's view in the Seventh Circuit, that no harm, no foul. Your argument is even though you have a judgment against you, there's no harm to have the judgment until you pay the judgment? That you have no standing just because a judgment... They're not attacking the judgments, I think, Your Honor, right? So the judgments are certainly valid. The judgment itself doesn't do any harm when you have a judgment entered against you? Well, so the judgment has a harm because there's a judgment against you, but this is a writ of garnishment with an alleged higher interest rate than should be claimed and the writ of garnishment never hit. And your argument is there's no harm until you actually pay the money? If it is garnished, yes, Your Honor. Judgment and garnishment? As to the amount of that garnishment... You have no standing to challenge it when you have... Well, the standing to challenge actual garnishment would have been, I suppose, below in the garnishment action in the state court. Objections to the garnishment... Why can't you sue to prevent the higher interest rate from being paid? Why do you have to wait until you've paid it? Under the FDCPA, I would say that that is, and the standing doctrine that's coming out, that you do have to pay it. You have to have some sort of harm. You have to have some sort of harm from that alleged higher interest rate on a garnishment. Potential harm is not enough? Potential harm is not enough. I thought the test was, like, surely imminent or something, and that's... Because you're allowed to sue before you lose your arm or something. That's the way we do it. We try to avoid lost arms. That's true, Your Honor. With deprivations in your bank accounts. Although... The test was certainly impending, and how is this not certainly impending? Well, Your Honor... You have to assume they're right about the merits. Yes, that's correct. Which I'm not asking you to agree with. It's not hypothetical or speculative. I mean, they're... That's right. I suppose that's correct, Your Honor. If the 13% or whatever the garnish interest amount was, was too high and it actually resulted in a garnishment where amounts were taken that were above the judgment or in excess of what they should be. How else is this speculative? So what I hear you saying is the right-line rule, if you didn't actually pay the higher amount until you pay, no standing. Put that to the side. Bracket that. In what other ways is it speculative that the plaintiffs are going to eventually pay a higher rate than they should under their theory of the case? Well, the garnishment would have to become effective, right? There would have to be some sort of amount that's garnished, and the amount received would have been that amount that is the higher interest amount. Is that likely to happen? Well, it didn't happen, Your Honor, here at all with these interest amounts. So it could be imminent, but... Because... Not because of the lawsuit, because there was no objection down below to the writs. There was never an amount recovered with that extra interest amount built into it. And I think your position, this is Article III standing you're talking about. That is correct, Your Honor. No interest, no concrete injury. That's quite a high standard of standing, that's for sure. Okay. Well, their claim is under 1692E as well, which is almost like a misrepresentation standard. And they also allege in their brief, I think for the first time, because that wasn't raised below, that their injury is not only that, but stress and anxiety because of this, which this court recently rejected as a standing argument for injury in the Buchholz case. Judge Guy, do you have any other questions? I do not. Okay. I think we're done. Thank you. So is it Mr. Westbrook? So let's see, we have to address Rooker-Feldman. Do you still think we should address standing and this other abstention point? And where are you still on the statute of limitations? Obviously, I'm going to talk about Rooker-Feldman a little bit more. I think it's helpful that discussion sort of takes us around the other issues somewhat. So I certainly don't have any objection to this panel determining the Article III standing issue. I think that's sort of a natural one, even though it really wasn't raised below. If it's jurisdictional, we might as well deal with it rather than maybe bounce back and forth. So first of all, I think that as you've observed, Judge Sutton, and as I think the Van Hoven opinion demonstrates, if you're not seeking to overturn a state court judgment, Rooker-Feldman is not going to apply. So we don't have that here. That's the threshold end of inquiry on Rooker-Feldman. But there's other situations or facts here or application of fact to law here that also would make Rooker-Feldman inapplicable, even if we ignore that threshold issue. Here, we're seeking damages under FDCPA for attempted overcollection of debts beyond what the law allows. That's 1692E, 15 U.S.C. 1692E. The claims are brought against debt collectors for their own misconduct. It's not trying to overturn or vacate the judgments. It's going after persons independent of the state court. Denying a conclusion of the district court or of the state court is okay under Macy. Actually, that's not Macy. I apologize. That's under McCormick v. Braverman. I think it deals with the issue of is there some aspect of the state court being... Let's talk about Rooker-Feldman. Do you have a response to the case he relied on? The Abbott case? I don't have that with me, Your Honor. It wasn't explicated. Just gotten up here and said, I'm good to go. I understand, Your Honor. One thing I want to get to before we leave Rooker-Feldman is what are the district court or what are the state court judgments that are being relied upon on Rooker-Feldman by Mary Jane M. Elliot, which had 13% interest in their default judgments that they filed in the state courts? Well, first of all, I think it's very questionable whether those default judgments are judgments to which Rooker-Feldman could apply in any event. Because as the court stated in its Van Hoven opinion, Rooker-Feldman judgments, judgments to which the Rooker-Feldman doctrine can apply, have to investigate, declare, and enforce liabilities based on application of law to fact. That doesn't happen with state court default judgments in the state of Michigan. The clerk stamps the judgments. They're not reviewed by any court. They're actually served on the- I mean, it seems a little unfair because I said to the first appellant's lawyer that we weren't going to go through all the Van Hoven stuff, and he kindly got the hint. And you're using your rebuttal to go through all the Van Hoven stuff. And that seems, I don't want to say anything more. Are you getting what I'm saying? I understand, Your Honor. I understand. Good. Thank you. Judge Guy, do you have any questions? No. Thank you. Okay. Thanks to all four of you. We're grateful for your written briefs and arguments. Thank you so much. Thank you, Your Honor. Appreciate it. Case will be submitted, and the clerk may call the next case.